UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------

LOUIS DOSSOUS,

                Plaintiff,

        v.

NEW YORK CITY HEALTH AND HOSPITALS
CORPORATION,

                Defendant.

-----------------------------------------------------------------

**MEMORANDUM & ORDER**
19-CV-3098 (MKB)

MARGO K. BRODIE, United States District Judge:

Plaintiff Louis Dossous, proceeding *pro se*, commenced the above-captioned action on

May 23, 2019, against Defendant the New York City Health and Hospitals Corporation, pursuant

to the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq*. (the "ADA").[1]  (Compl.,

Docket Entry No. 1.)  Plaintiff filed an Amended Complaint on January 8, 2021 and a Second

Amended Complaint on April 19, 2021 ("SAC").  (*See* Am. Compl., Docket Entry No. 30; SAC,

Docket Entry No. 39.)  In the SAC, Plaintiff claims that Defendant discriminated against him on

the basis of his disability by: (1) terminating his employment; (2) not promoting him; (3) not

accommodating his disability; (4) subjecting him to unequal terms and conditions of

---

[1]  By Memorandum and Order dated September 25, 2020, the Court dismissed all but
Plaintiff's ADA discrimination claim based on his termination for failure to state a claim (the
"September 2020 Decision").  (Mem. & Order dated Sept. 25, 2020, Docket Entry No. 22.)

employment;[2] and (5) retaliating against him.  (*See* SAC 4.)  Plaintiff also asserts a breach of contract claim and a claim for the wrongful destruction of his personnel file.  (*Id.*)

Defendant moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure as to all of Plaintiff's claims, and Plaintiff opposes the motion.[3]  For the reasons explained below, the Court grants Defendant's motion for summary judgment.

## I.   Background

The following facts are undisputed unless otherwise noted.[4]

### a.   Relevant parties

Defendant "operates health care facilities" throughout New York City which "provid[e] general, chronic, ambulatory, skilled nursing care and a wide array of specialized patient care services."[5]  (Def.'s 56.1 ¶ 1.)  Defendant hired Plaintiff as a Patient Care Technician ("PCT") in

---

[2]  When asked to explain his unequal terms and conditions of employment claim during a deposition, Plaintiff testified that he was "not sure about this" and did not "remember everything."  (Pl.'s Dep. 33:17–18, annexed to Decl. of Kimberly E. Wilkens in Supp. of Def.'s Mot. ("Wilkens Decl.") as Ex. C, Docket Entry No. 63-3.)  In the SAC, Plaintiff states that "Defendant never made a commitment to provide [him] with equal opportunities" and "prevented [him] from enjoying the benefits and privileges as other employees."  (Second Am. Compl. 5.)  Because Plaintiff has failed to present any evidence in support of this claim, the Court grants Defendant's motion for summary judgment as to this claim.

[3]  (Def.'s Mot. for Summ. J., Docket Entry No. 62; Def.'s Mem. in Supp. of Def.'s Mot. ("Def.'s Mem."), Docket Entry No. 62-3; Def.'s Reply in Supp. of Def.'s Mot. ("Def.'s Reply"), Docket Entry No. 62-6; Pl.'s Opp'n to Def.'s Mot. for Summ. J. ("Pl.'s Opp'n"), Docket Entry Nos. 58, 62-4.)

[4]  (Def.'s Stmt. of Undisputed Material Facts Pursuant to Local Rule 56.1 ("Def.'s 56.1"), Docket Entry No. 62-2; Pl.'s Resp. to Def.'s 56.1 ("Pl.'s 56.1 Resp."), Docket Entry Nos. 59, 62-5; Pl.'s R. 56.1 Counter-Statement ("Pl.'s 56.1"), Docket Entry No. 55.)

[5]  Plaintiff does not dispute Defendant's description of its business and the services which it provides.  (Pl.'s 56.1 Resp. ¶ 1.)  However, in response to this description, and without elaborating, Plaintiff states that "the policy is inconsistent with the Americans with Disabilities Act."  (*Id.*)

2006.  (Def.'s 56.1 ¶ 4; Pl.'s 56.1 Resp. ¶ 4.)  As a PCT, Plaintiff's responsibilities involved "car[ing] for patients, including turning and positioning patients[,] and transporting patients and residents via either wheelchair, stretcher[,] or bed to other facilities and areas of the hospital." (Def.'s 56.1 ¶ 5; Pl.'s 56.1 Resp. ¶ 5.)

      **b.   Defendant's injured worker policy**

Defendant's "policy in regard to reinstatement after separation for disability is set forth in its Personnel Rules and Regulations."[6]  (Def.'s 56.1 ¶ 2; Pl.'s 56.1 Resp. ¶ 2.)  The policy provides that:

> [permanent employees who become] separated from service because of a job connected disability or disease . . . shall be entitled to a leave of absence for at least a year unless permanently incapacitated from performing the duties of the position.  If, upon appeal to the Personnel Review Board ("PRB") within one year following termination of the disability, the PRB medical officer certifies that such person is physically, medically, mentally fit to perform the essential duties of his/her former title with or without a reasonable accommodation, he/she shall be reinstated to his/her former title if there is a vacancy . . . for which he/she is eligible for transfer.

(Def.'s 56.1 ¶ 3; Pl.'s 56.1 Resp. ¶ 3.)[7]  When "a determination of fitness is made, PRB will grant the appeal if there is a vacancy, but . . . the PRB medical officer does not have the authority

---

[6]  Plaintiff does not dispute this, but "contends [that] the policy is inconsistent with [T]itle I of the ADA."  (Pl.'s 56.1 Resp. ¶ 2.)

[7]  Plaintiff does not dispute the contents of Defendant's policy but notes that he "applied for several positions and had never been taken into consideration."  (Pl.'s 56.1 Resp. ¶ 3.) Plaintiff also contends that Defendant's policy of having employees who are seeking reinstatement undergo a medical examination "violate[s] the accommodation process" of the ADA.  (*Id.* ¶ 22.)  Plaintiff also argues that the policy violates state law and the ADA, (*id.* ¶ 32), but does not identify the state law which he believes Defendant's policy violates.

to recommend that the employee be placed in a position other than the position they formerly held." (Def.'s 56.1 ¶ 32; Pl.'s 56.1 Resp. ¶ 32.)

### c. Plaintiff's injury and subsequent events

Plaintiff contends that while he was employed by Defendant, (Pl.'s 56.1 Resp. ¶ 18), he suffered a lower back injury,[8] (Def.'s 56.1 ¶ 7; Pl.'s 56.1 Resp. ¶ 7; Pl.'s 56.1. ¶ 1).  He contends that on February 7, 2007, he injured his lower back while "transporting a patient from emergency care to another department." (Def.'s 56.1 ¶ 9; Pl.'s 56.1 Resp. ¶ 9.)  Following his injury, he requested that Defendant provide a workplace accommodation pursuant to the ADA. (SAC 5.) Defendant denied the request. (*Id.*)  On May 7, 2007, Plaintiff's injury was exacerbated while he "moved a different patient to another department as a PCT." (Def.'s 56.1 ¶ 10; Pl.'s 56.1 Resp. ¶ 10; *see also* Pl.'s 56.1 ¶ 1.)  Due to his injury, in May of 2007, Plaintiff took leave from his PCT position. (Def.'s 56.1 ¶ 13; Pl.'s 56.1 Resp. ¶ 13.)  Plaintiff claims that Defendant denied his written and oral request for a reasonable workplace accommodation following his second injury. (SAC 5; Pl.'s Dep. 25:13–17.)  Plaintiff also claims that, following his workplace injuries and while he was still employed as a PCT, he "applied for other positions or promotions" with Defendant, including "a position on labor relations." (Pl.'s Dep. 30:22–32:4.)  Plaintiff claims that Defendant "never called [him] up" for the positions to which he applied. (*Id.* at 31:14–16.)

Defendant fired Plaintiff in May of 2008.[9]  (Def.'s 56.1 ¶ 13; Pl.'s 56.1 Resp. ¶ 13.)  In 2009, Plaintiff and Defendant "agreed to convert Plaintiff's termination to a Worker's

---

[8]  During his deposition, Plaintiff could not recall if he was employed by Defendant when he initially injured his back. (Def.'s 56.1 ¶ 8.)  Plaintiff now claims that he "misunderstood the question," and that his injuries occurred at Defendant's facility. (Pl.'s 56.1 Resp. ¶ 8.)

[9]  Plaintiff does not dispute the timing of his firing by Defendant, but contends that he was not made aware of his firing in May of 2008. (Pl.'s 56.1 Resp. ¶ 13.)  Plaintiff claims that his firing constituted retaliation in violation of the ADA. (Pl.'s Dep. 33:21–22.)

Compensation Leave of Absence, retroactive to August of 2007." (Def.'s 56.1 ¶ 14; Pl.'s 56.1 Resp. ¶ 14.) Plaintiff and Defendant also agreed that "Plaintiff would be eligible to seek reinstatement with [Defendant] within one year of resolving his medical issues." (Def.'s 56.1 ¶ 15; Pl.'s 56.1 Resp. ¶ 15.) In January of 2010, Defendant, Plaintiff, and Plaintiff's union, the Local 420, District Council 37, AFSCME, AFL-CIO, memorialized this agreement in a Stipulation of Settlement. (Stip. of Settlement, annexed to Wilkens Decl. as Ex. G, Docket Entry No. 63-7.)

Plaintiff underwent back surgery in July of 2009. (Def.'s 56.1 ¶ 11; Pl.'s 56.1 Resp. ¶ 11.) Following the surgery, Plaintiff was not permitted to undertake heavy lifting, transportation, or bending. (Def.'s 56.1 ¶ 12; Pl.'s 56.1 Resp. ¶ 12.) Plaintiff "received workers' compensation benefits from approximately 2008 to March of 2020," as well as disability benefits from 2008 until at least June of 2021. (Def.'s 56.1 ¶ 16; Pl.'s 56.1 Resp. ¶ 16.)

After examining Plaintiff on March 26, 2018 and May 15, 2018, Plaintiff's medical provider, Timur Hanan, concluded that Plaintiff "could return to 'light duty' work," but "should avoid any heavy lifting, pushing, pulling or strenuous activities." (Def.'s 56.1 ¶ 27; Pl.'s 56.1 Resp. ¶ 27.) At the time, Plaintiff was attending physical therapy monthly and regularly experienced low back pain.[10] (Letter from Dr. Jeffrey Gross, annexed to Wilkens Decl. as Ex. H, Docket Entry No. 63-8.)

Pursuant to the procedures for reinstatement outlined in Defendant's Rules and Regulations, (see Personnel Rules and Regulations 7.3.4, annexed to Wilkens Decl. as Ex. B,

---

[10] Following another examination with Dr. Hanan on May 15, 2018, Hanan determined that Plaintiff "need[ed] to continue physical therapy [and his] rehabilitation program." (Letter from Dr. Timur Hanan, annexed to Wilkens Decl. as Ex. 12, Docket Entry No. 63-12.)

Docket Entry No. 63-2), "[o]n April 25, 2018, Plaintiff filed a notice of appeal with the PRB seeking reinstatement," (Def.'s 56.1 ¶ 21; Pl.'s 56.1 Resp. ¶ 21), with an accommodation, (Pl.'s PRB Appeal Decision 2, annexed to Wilkens Decl. as Ex. M, Docket Entry No. 63-13).  Pursuant to the medical examination requirement of Defendant's reinstatement policy, (*see* Def.'s 56.1 ¶ 22; Pl.'s 56.1 Resp. ¶ 22), on or about July 18, 2018, Jeffrey Gross, M.D. examined Plaintiff, (Def.'s 56.1 ¶ 24; Pl.'s 56.1 Resp. ¶ 24).  Plaintiff informed Dr. Gross that he was "unable to perform the job of a PCT" due to "the lifting, pulling, and pushing requirements that the job regularly entails."  (Def.'s 56.1 ¶ 29; Pl.'s 56.1 Resp. ¶ 29.)  Plaintiff also told Dr. Gross that "he could not transfer patients or wheel them on stretchers."  (Def.'s 56.1 ¶ 29; Pl.'s 56.1 Resp. ¶ 29.)  Dr. Gross concluded and stated in his report that Plaintiff "is incapable of performing the job of a patient care technician."  (Def.'s 56.1 ¶ 30; Pl.'s 56.1 Resp. ¶ 30.)  Dr. Gross did "not see how any accommodations to this position could be made that would allow [Plaintiff] to do this job."  (Def.'s 56.1 ¶ 30; Pl.'s 56.1 Resp. ¶ 30.)

On August 9, 2018, the PRB "denied [P]laintiff's appeal and adopted the conclusions of Dr. Gross," (Def.'s 56.1 ¶ 33; Pl.'s 56.1 Resp. ¶ 33), that Plaintiff "is not capable of performing the job of a [PCT]," (Pl.'s Appeal Decision 2).

In July of 2018, Plaintiff filed a charge of disability discrimination against the PRB board members with the New York State Division on Human Rights ("NYSDHR") and the United States Equal Employment Opportunity Commission ("EEOC").[11]  (Def.'s 56.1 ¶ 36; Pl.'s 56.1 Resp. ¶ 36.)  Plaintiff alleged that Defendant discriminated against him "because of age, disability, and opposed discrimination/retaliation in violation of N.Y. Exec. Law, art. 15."

---

[11]  While the parties' Rule 56.1 statements identify July 2018 as the period when Plaintiff filed his discrimination charge, the NYSDHR noted in its Determination and Order After Investigation that Plaintiff filed his verified complaint on August 21, 2018.  (Compl. 9.)

(Compl. 9.)  Plaintiff claimed that Defendant "did not reinstate him in his former position because he is 48 years of age and has a back injury." (*Id.*)  In response, Defendant asserted that Plaintiff's claims of discrimination were "entirely without merit" and that "he was not entitled to consideration for positions other than his former position of [PCT]." (Def.'s NYSDHR Resp. 4, annexed to Wilkens Decl. as Ex. E, Docket Entry No. 63-5.)

On March 4, 2019, the NYSDHR determined that there was no probable cause to believe that the PRB engaged in any unlawful discriminatory practices against Plaintiff.  (Def.'s 56.1 ¶ 37; Pl.'s 56.1 Resp. ¶ 37.)  The NYSDHR stated that its "investigation [did] not support [Plaintiff's] allegations of age and disability discrimination" and similarly "did not find [Defendant's] proffered reasons for not reinstating [Plaintiff] to be pretextual." (Compl. 10.)  In addition, the NYSDHR noted that "there [was] no evidence that [Plaintiff] opposed discrimination as required in order to meet the prima facie case of retaliation." (*Id.*)   On May 15, 2019, the EEOC adopted the findings of the NYSDHR and issued Plaintiff a Right to Sue Letter.  (Def.'s 56.1 ¶ 38; Pl.'s 56.1 Resp. ¶ 38.)

## II.  Discussion

### a.  Standard of review

Summary judgment is proper only when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Radwan v. Manuel*, 55 F.4th 101, 113 (2d Cir. 2022) (quoting Fed. R. Civ. P. 56(a)); *Borley v. United States*, 22 F.4th 75, 78 (2d Cir. 2021) (same).  The court must "constru[e] the evidence in the light most favorable to the nonmoving party," *Radwan*, 55 F.4th at 113 (alteration in original) (quoting *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 358 (2d Cir. 2011)), and "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom

summary judgment is sought," *Koral v. Saunders*, 36 F.4th 400, 408 (2d Cir. 2022) (quoting

*Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)); *see also Lenzi v. Systemax, Inc.*, 944 F.3d

97, 107 (2d Cir. 2019) (same).  The role of the court "is not to resolve disputed questions of fact

but only to determine whether, as to any material issue, a genuine factual dispute exists." *Kee v.*

*City of New York*, 12 F.4th 150, 167 (2d Cir. 2021) (quoting *Kaytor v. Elec. Boat Corp.*, 609

F.3d 537, 545 (2d Cir. 2010)); *see also Rogoz v. City of Hartford*, 796 F.3d 236, 245 (2d Cir.

2015) (same).  A genuine issue of fact exists when there is sufficient "evidence on which the jury

could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 252 (1986).  The "mere existence of a scintilla of evidence" is not sufficient to defeat

summary judgment.  *Id.*  The court's function is to decide whether, "after resolving all

ambiguities and drawing all inferences in favor of the nonmovant, a reasonable jury could return

a verdict for the nonmovant." *Miller v. N.Y. State Police*, No. 20-CV-3976, 2022 WL 1133010,

at *1 (2d Cir. Apr. 18, 2022) (first citing *Anderson*, 477 U.S. at 248; then citing *Garcia v.*

*Hartford Police Dep't*, 706 F.3d 120, 127, 129 (2d Cir. 2013)); *see also Pinto v. Allstate Ins. Co.*,

221 F.3d 394, 398 (2d Cir. 2000) (same).

      In reviewing a motion for summary judgment involving a pro se litigant, "special

solicitude should be afforded." *Gachette v. Metro N.-High Bridge*, 722 F. App'x 17, 19 (2d Cir.

2018) (alteration omitted) (quoting *Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir. 1988)); *see*

*also Essani v. Earley*, No. 13-CV-3424, 2021 WL 1579671, at *4 (E.D.N.Y. Apr. 22, 2021)

(quoting *Graham*, 848 F.2d at 344).  The court must "read his pleadings 'liberally and interpret

them to raise the strongest arguments that they suggest.'" *Jorgensen v. Epic/Sony Recs.*, 351

F.3d 46, 50 (2d Cir. 2003) (quoting *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999)).

However, this "does not relieve [the pro se] plaintiff of his duty to meet the requirements

necessary to defeat a motion for summary judgment." *Id.* (quoting *Jorgensen v. Epic/Sony Recs.*, No. 00-CV-9181, 2002 WL 31119377, at *2 (S.D.N.Y. Sept. 24, 2002)).

### b. ADA claims

First, Defendant argues that Plaintiff's ADA claims stemming from Defendant's alleged discrimination during Plaintiff's employment — including Plaintiff's retaliation, unequal terms and conditions of employment, and failure to promote and accommodate claims — are time-barred, and only claims which accrued after August of 2018 may be considered because Plaintiff did not file an administrative complaint with the EEOC until May of 2019.  (Def.'s Mem. 5.) Second, Defendant argues that only Plaintiff's ADA claims pertaining to the PRB's decision are properly before the Court and all other ADA claims must be dismissed because Plaintiff did not exhaust his administrative remedies as to the other ADA claims by timely presenting claims which accrued during his employment with Defendant to the NYSDHR and EEOC prior to commencing this action.  (*Id.* at 5–6.)  Third, Defendant argues that Plaintiff's ADA failure to promote, unequal terms and conditions of employment, and retaliation claims should be dismissed due to Plaintiff's failure to provide supporting allegations just as those claims were dismissed in the Court's September 2020 Decision.  (*Id.* at 6.)  Fourth, Defendant argues that with respect to the PRB declining to reinstate Plaintiff as a PCT, Plaintiff has failed to establish a prima facie case of disability discrimination because he is unable to perform the duties of a PCT.  (*Id.* at 8–10.)  Fifth, assuming Plaintiff to be arguing that PCT duties should have been altered to accommodate his disability, Defendant notes that Dr. Gross considered the feasibility of accommodations but determined that no such accommodation was available.  (*Id.* at 10.)  Sixth, Defendant argues that it was not required to create a new position for Plaintiff to fill.  (*Id.* at 11.) Finally, Defendant argues that it was not required to reinstate Plaintiff to his old position because

he could not perform the duties of his position — an explicit condition of the stipulation agreement between Defendant and Plaintiff.  (*Id.* at 12.)

Plaintiff argues that the PRB's decision to deny him reinstatement was "erroneous" because he was entitled to an accommodation pursuant to the ADA, (Pl.'s Opp'n 1), and constituted unlawful termination in violation of the ADA, (Pl.'s Dep. 29:16–30:5).  Plaintiff sought an accommodation to (1) "not to do everything, transportation and everything associated with [the] PCT position," or (2) "a position that uses his new skills."  (Def.'s 56.1 ¶ 35 (internal brackets and quotation marks omitted).)  Plaintiff argues that "[t]he ADA require[s] an employer to reassign an employee who is disabled and no longer able to perform the essential functions of their current position to a different position as a reasonable accommodation."  (Pl.'s Opp'n 5.) Plaintiff claims that Defendant "did not protect" him, "which made the second injury happen[]," (*id.*), and subsequently failed to "promote," "retrain," or "look at [his] other credentials" to find a new position for him, (Pl.'s Dep. 30:10–12).

### i.   Plaintiff's failure to promote and retaliation claims are untimely

Plaintiff failed to timely raise his failure to promote, unequal terms and conditions of employment, and retaliation claims with the EEOC within the 300-day period required by the ADA and his claims are therefore untimely.

Prior to filing an ADA action in federal court, a plaintiff must timely file a charge of employment discrimination with the EEOC.  42 U.S.C. § 12117(a); *Roy v. Buffalo Philharmonic Orchestra*, 684 F. App'x 22, 23 (2d Cir. 2017) ("A plaintiff raising an ADA claim of discrimination must exhaust all administrative remedies by filing an EEOC charge within 300 days of the alleged discriminatory conduct.") (citing *Tewksbury v. Ottaway Newspapers*, 192 F.3d 322, 325 (2d Cir. 1999)); *Troeger v. Ellenville Cent. Sch. Dist.*, 523 F. App'x 848, 851 (2d

Cir. 2013) ("[A] claimant pursuing claims under the ADA must file charges with the EEOC

within 300 days of the purportedly unlawful acts." (citing 42 U.S.C. § 12117(a)); *see also*

*Kornmann v. City of New York Bus. Integrity Comm'n*, 467 F. Supp. 3d 54, 59 (E.D.N.Y. 2020)

(same).  In New York, a federal employment discrimination claim is time-barred unless the

plaintiff first files an EEOC or NYSDHR administrative charge within 300 days of the alleged

discrimination.  *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 78–79 (2d Cir. 2015)

(quoting 42 U.S.C. § 2000e-5(e)(1)); *McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 75 (2d

Cir. 2010) (same).  This requirement is analogous to a statute of limitations.  *See Vega*, 801 F.3d

at 79 (explaining that claims filed within the statute of limitations are not time barred); *Patterson*

*v. Cnty. of Oneida, N.Y.*, 375 F.3d 206, 220 (2d Cir. 2004) (dismissing as untimely claims based

on conduct that occurred more than 300 days prior to the filing of EEOC charge).  The statute of

limitations may be tolled by the continuing violation exception, equitable tolling, equitable

estoppel, or waiver.  *Fowlkes v. Ironworkers Loc. 40*, 790 F.3d 378, 385 (2d Cir. 2015) ("[F]iling

a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in

federal court, but a requirement that . . . is subject to waiver, estoppel, and equitable tolling."

(quoting *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982))); *Briones v. Runyon*, 101

F.3d 287, 290 (2d Cir. 1996) ("[T]he statutory requirement for filing is analogous to a statute of

limitations and is, therefore, considered subject to waiver, estoppel, and equitable tolling."

(citation omitted)).

    However, "[c]laims not raised in an EEOC complaint . . . may be brought in federal court

if they are reasonably related to the claim filed with the agency."  *Zarada v. Altitude Express,*

*Inc.*, 883 F.3d 100, 110 n.5 (2d Cir. 2018) (quoting *Williams v. N.Y.C. Hous. Auth.*, 458 F.3d 67,

70 (2d Cir. 2006)); *Soules v. Conn. Dep't of Emergency Servs. & Pub. Prot.*, 882 F.3d 52, 57 (2d

Cir. 2018) (same).  "Reasonably related" claims are recognized in three situations: where (1) the alleged discriminatory conduct "would fall within the 'scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination'"; (2) the claim is one of "retaliation by an employer against an employee for filing an EEOC charge"; and (3) the plaintiff "alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge." *Terry v. Ashcroft*, 336 F.3d 128, 151 (2d Cir. 2003) (quoting *Butts v. City of New York Dep't of Hous. Pres. & Dev.*, 990 F.2d 1397, 1402–03 (2d Cir. 1993)); *see also Carter v. New Venture Gear, Inc.*, 310 F. App'x 454, 458 (2d Cir. 2009) (same).  "The central question is whether the complaint filed with the EEOC gave that agency 'adequate notice to investigate discrimination on both cases.'" *Ximines v. George Wingate High Sch.*, 516 F.3d 156, 158 (2d Cir. 2008) (quoting *Deravin v. Kerik*, 335 F.3d 195, 201 (2d Cir. 2003)).

Plaintiff was injured at work in February of 2007.  (Def.'s 56.1 ¶ 9; Pl.'s 56.1 Resp. ¶ 9.)  Plaintiff claims that Defendants failed to promote him following the injury, (Pl.'s Dep. 30:7–17), and retaliated against him by terminating his employment, (*id.* 33:19–22).  Defendant terminated Plaintiff's employment in May of 2008, (Def.'s 56.1 ¶ 13; Pl.'s 56.1 Resp. ¶ 13), and converted his termination into a leave of absence in January of 2010, (*see* Stip. of Settlement).  Plaintiff did not file discrimination charges with the NYSDHR or EEOC within three hundred days of these events.  When Plaintiff eventually filed a disability discrimination charge with NYSDHR and the EEOC in July of 2018, (Def.'s 56.1 ¶ 36; Pl.'s 56.1 Resp. ¶ 36), Plaintiff did not include conduct occurring prior to his PRB appeal as a basis for his discrimination claims.  Plaintiff has provided no reason for the Court to excuse his failure to timely file a discrimination charge with the NYSDHR or EEOC concerning Defendant's alleged actions towards Plaintiff prior to his termination.  Plaintiff has similarly not argued that the contents of his July 2018 NYSDHR and

EEOC charge — which only concern the PRB's handling of his appeal in 2018 — are reasonably related to his retaliation or failure to promote claims. Thus, Plaintiff fails to demonstrate that he exhausted his administrative remedies with regard to these claims.

Accordingly, Plaintiff's failure to promote and retaliation claims are time-barred. The Court grants Defendant's summary judgment motion with respect to Plaintiff's ADA claims for failure to promote and retaliation. *See Jones v. N.Y. State Metro D.D.S.O*, 543 F. App'x 20, 22 (2d Cir. 2013) (affirming dismissal of ADA claim as time barred where plaintiff "failed to file charges with the Equal Employment Opportunity Commission within 300 days of the alleged discriminatory act"); *Kendall v. Fisse*, 149 F. App'x 19, 20–21 (2d Cir. 2005) (same).

### ii. Plaintiff's termination and failure to accommodate claims fail on the merits

Plaintiff's termination and failure to accommodate claims fail on the merits because Plaintiff has not shown that a reasonable accommodation would have permitted him to perform the duties of the PCT position.

"The ADA prohibits an employer from discriminating against a qualified individual on the basis of disability." *Hosanna-Tabor Evangelical Lutheran Church and Sch. v. E.E.O.C.*, 565 U.S. 171, 179 (2012) (citing 42 U.S.C. § 12112(a)). Discrimination claims brought under the ADA "are subject to the traditional burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Forrester v. Prison Health Servs., Inc.*, 651 F. App'x 27, 28 (2d Cir. 2016) (first citing *McMillian v. City of New York*, 711 F.3d 120, 125 (2d Cir. 2013); then citing *Cortez v. MTA N.Y.C. Transit*, 802 F.3d 226, 231 (2d Cir. 2015)). "There are three steps to this burden-shifting analysis: (1) '[a] plaintiff must establish a prima facie case'; (2) 'the employer must offer through the introduction of admissible evidence, a legitimate non-discriminatory reason for the discharge'; and (3) 'the plaintiff must then produce evidence and

carry the burden of persuasion that the proffered reason is a pretext.'"  *Genova v. Cnty. of Nassau*, 851 F. App'x 241, 242 (2d Cir. 2021) (quoting *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006)).  To establish a prima facie case "[w]hen the alleged discrimination is an employer's failure to offer a reasonable accommodation, the plaintiff must present evidence establishing" that:

> (1) [The plaintiff] is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, [the plaintiff] could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations."

*Bey v. City of New York*, 999 F.3d 157, 165 (2d Cir. 2021) (alterations in original) (quoting *Noll v. Int'l Bus. Machs. Corp.*, 787 F.3d 89, 94 (2d Cir. 2015)).  *See also Woolf v. Strada*, 949 F.3d at 89, 93 (2d Cir. 2020) (same (first citing *Sista*, 445 F.3d at 169; and then citing *McMillan v. City of New York*, 711 F.3d 120, 126 (2d Cir. 2013))); *Knope v. Garland*, No. 20-CV-3274, 2021 WL 5183536, at *2 (2d Cir. Nov. 9, 2021) (listing four-pronged test to establish a prima facie case of discrimination based on an employer's failure to accommodate (quoting *Natofsky v. City of New York*, 921 F.3d 337, 352 (2d Cir. 2019)); *Fox v. Costco Wholesale Corp.*, 918 F.3d 65, 73 (2d Cir. 2019) (same).  In addition, "the plaintiff must show 'the connections between (1) the failure to accommodate a disability, (2) the performance deficiencies, and (3) the adverse employment action.'"  *Clark v. Coca-Cola Beverages Ne., Inc.*, No. 20-CV-4040, 2022 WL 92060, at *4 (2d Cir. Jan. 10, 2022) (emphasis omitted) (quoting *Natofsky*, 921 F.3d at 352); *Knope*, 2021 WL 5183536, at *2 (same).

"Where the employee's disability is known to the employer, '[t]he ADA envisions an 'interactive process' by which employers and employees work together to assess whether an employee's disability can be reasonably accommodated.'"  *Stevens v. Rite Aid Corp.*, 851 F.3d 224, 231 (2d Cir. 2017) (alteration in original) (quoting *Jackan v. N.Y. State Dep't of Lab.*, 205

F.3d 562, 566 (2d Cir. 2000)).  A reasonable accommodation "may include 'acquisition or modification of equipment or devices' and 'other similar accommodations,'" *Laguerre v. Nat'l Grid USA*, No. 20-CV-3901, 2022 WL 728819, at \*4 (2d Cir. Mar. 11, 2022) (quoting 42 U.S.C. § 1211(9)(B)), but the creation of new positions and the elimination of a job's essential function are not reasonable accommodations under the ADA, *Clark*, 2022 WL 92060, at \*3.  In addition, the "failure to engage in a good faith interactive process is not an independent violation of the ADA." *Sheng v. M&TBank Corp.*, 848 F.3d 78, 87 (2d Cir. 2017); *Stevens*, 851 F.3d at 231 (same).  "That being said, the ADA imposes liability for, *inter alia*, discriminatory refusal to undertake a feasible accommodation, not mere refusal to explore possible accommodations where, in the end, no accommodation was possible."  *McBride v. BIC Consumer Prods. Mfg. Co., Inc.*, 583 F.3d 92, 100 (2d Cir. 2009).

As a PCT, Plaintiff was required "to care for patients" by "turning and positioning patients and transporting patients and residents via either wheelchair, stretcher or bed to other facilities and areas of the hospital." (Def.'s 56.1 ¶ 5; Pl.'s 56.1 Resp. ¶ 5.)  Plaintiff does not contest that he could not adequately perform these essential tasks at the time he applied for reinstatement.  Indeed, during his medical examination on July 18, 2018, Plaintiff told Dr. Gross that he was "unable to perform the job of a PCT" due to "the lifting, pulling, and pushing requirements that the job regularly entails." (Def.'s 56.1 ¶ 29; Pl.'s 56.1 Resp. ¶ 29.)  Plaintiff also told Dr. Gross that "he could not transfer patients or wheel them on stretchers." (Def.'s 56.1 ¶ 29; Pl.'s 56.1 Resp. ¶ 29.)  Plaintiff did not present to Defendant a reasonable accommodation which would have allowed him to perform the tasks of a PCT.  *See Simmons v. Northside Sav. Bank*, 162 F.3d 1148, 1148, 1998 WL 642479, at \*1 (2d Cir. 1998) (unpublished table decision) (noting that "the plaintiff bears the initial burden of showing that she can perform the essential

functions of the job with or without reasonable accommodation" (citing *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998)). Instead, Plaintiff requested that he either be permitted to "not [] do everything, transportation and everything associated with [the] PCT position," or be given "a position that uses his new skills." (Pl.'s 56.1 Resp. ¶ 35 (internal brackets and quotation marks omitted).) These accommodation requests are not reasonable within the meaning of the ADA, and Defendant was therefore not obligated to grant them. *See Clark*, 2022 WL 92060, at *2–3 (noting that an employer was not required to assign a disabled employee who "was unable to perform the essential functions of [a] general warehouse position" to "a light-duty position — which was not available — or [to] reallocat[e] physical tasks from him to other team members" because "these are not considered *reasonable* accommodations" under the ADA); *Clarke v. White Plains Hosp.*, 650 F. App'x 73, 74 (2d Cir. 2016) (noting that a defendant was not "required to create a new position to accommodate" the plaintiff).

Given Plaintiff's inability to perform the essential functions of the PCT position, and his failure to identify a reasonable accommodation which would allow him to perform those functions, Defendant was not required to reinstate Plaintiff as a PCT pursuant to the ADA and his failure to accommodate claim therefore fails. *See Snowden v. Trs. of Columbia Univ.*, 612 F. App'x 7, 10 (2d Cir. 2015) (affirming grant of summary judgment in favor of employer on ADA claims where the plaintiff "failed to demonstrate the existence of a reasonable accommodation that would allow her to perform the essential functions of her job"); *Buck v. AT & T Servs., Inc.*, No. 08-CV-1619, 2010 WL 2640045, at *6 (D. Conn. June 28, 2010) (granting summary judgment to employer on Plaintiff's ADA claim where Plaintiff "admitted that there was no possible accommodation that would have allowed [him] to perform his job"). Because Plaintiff was unable to perform the duties and responsibilities of a PCT with or without reasonable

accommodation, Defendant had a legitimate and nondiscriminatory reason for Plaintiff's

termination.  *Turner v. Eastconn Reg'l Educ. Serv. Ctr.*, 588 F. App'x 41, 43 (2d Cir. 2014)

(affirming dismissal of ADA claims where plaintiff "ha[d] not adequately established the

existence of a reasonable accommodation."); *Mathias v. Ready Workers Mgmt. Corp.*, No. 08-

CV-7245, 2009 WL 2985696, at *7 (S.D.N.Y. Sept. 18, 2009) (holding that plaintiff could not

prove his ADA discrimination claim where he "was no longer able to perform the essential

functions of" his job "either with or without reasonable accommodation" and "[t]here was no

accommodation available which would have allowed [the plaintiff] to continue to perform his

job").  Accordingly, the Court grants Defendant's motion as to Plaintiff's ADA failure to

accommodate and termination claims.

>   **c.   State law claims**

Defendant argues that the Court should grant its motions as to (1) Plaintiff's breach of

contract claim because Plaintiff "fails to articulate precisely how the Defendant [is] alleged to

have breach[ed] his stipulation," (Def.'s Mem. 7); and (2) Plaintiff's destruction of personnel file

claim because "[P]laintiff's expunged files, if any, were expunged in the ordinary course of

business and consistent with [D]efendant's Corporate Records Management Program and

Guidelines for Corporate Record Retention and Disposal," (*id.*).

Plaintiff did not address his state law claims in his opposition to Defendant's motion for

summary judgment and failed to provide further support for his allegations in his Rule 56.1

statements.  (S*ee generally* Pl.'s Opp'n; Pl's 56.1; Pl.'s 56.1 Resp.)  However, in his opposition

to Defendant's request for a pre-motion conference, Plaintiff claimed that "Defendant[] breached

[its] contract with [him] by refusing to abide by the stipulation . . . ."  (Pl.'s Resp. in Opp'n to

Def.'s Req. for a Pre-Mot. Conference, Docket Entry No. 52.)

The Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims and dismisses these claims without prejudice. *See Blodgett v. 22 S. St. Operations, LLC*, 828 F. App'x 1, 5 (2d Cir. 2020) (affirming district court's decision declining to exercise supplemental jurisdiction over state law claims after dismissing plaintiff's ADA claims); *One Commc'ns Corp. v. J.P. Morgan SBIC LLC*, 381 F. App'x 75, 82 (2d Cir. 2010) ("If all of a plaintiff's federal claims are dismissed, a district court is well within its discretion to decline to assert supplemental jurisdiction over any state law claims." (citing *WWBITV, Inc. v. Vill. of Rouses Point*, 589 F.3d 46, 52 (2d Cir. 2009))).

### III. Conclusion

For the foregoing reasons, the Court grants Defendant's motion for summary judgment. The Court dismisses Plaintiff's ADA failure to promote, unequal terms and conditions of employment, and retaliation claims as untimely and dismisses Plaintiff's ADA termination and failure to accommodate claims for failure to state a claim. The Court also dismisses Plaintiff's state law claims without prejudice.

Dated: June 30, 2023
      Brooklyn, New York

                          SO ORDERED:


                          _____s/ MKB_____
                          MARGO K. BRODIE
                          United States District Judge